UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PETER LADETTO,  )<br>    Petitioner   )<br>                    )<br>v.                    )<br>                    )<br>TIMOTHY HALL,  )<br>    Respondent  ) | Civil Action No. 04-11656-RCL |

**INITIAL MEMORANDUM IN SUPPORT OF
PETITIONER'S HABEAS CORPUS PETITION**

**I. Procedural History**

Petitioner was convicted in the Superior Court of Middlesex County on March 18, 1964 of first degree murder and armed assault with intent to rob. He was sentenced to death on the murder count and to a sentence of eighteen to twenty years on the assault count. His convictions and sentence were affirmed on appeal by the Supreme Judicial Court in *Commonwealth v. Ladetto*, 349 Mass 237, 207 N.E. 2d 536 (1965). The petitioner next filed a writ of error with the Single Justice of the Supreme Judicial Court. Relief was again denied in the state system, but his death sentence was subsequently commuted to life imprisonment following remand of his case by the United States Supreme Court in light of a *Witherspoon* issue. The defendant much later filed a motion for new trial in the Superior Court, the motion for new trial at issue in this proceeding. He exhausted his state remedies after said motion was denied by the Superior Court (the Single Justice of the Supreme Judicial Court denied his application for leave to appeal).

**II. Legal Argument**

    **A. The definition of "reasonable doubt" used by the trial court created a reasonable likelihood that the trial jurors understood the standard of proof to be below that required by Due Process of Law.**

1

In this case the trial court instructed the jury that the presumption of innocence prevails until there is proof of the defendant's guilt beyond a reasonable doubt, and then went on to elaborate on that term thusly:

> "Observe the word, 'reasonable.' It is not: beyond all doubt. It is not: beyond a possibility of doubt. It is a doubt which appeals to reason. It is not a capricious doubt. It is not a speculative doubt. It is a doubt for which you can assign [a] logical and cold reason.
> "If there is any doubt which appeals to your common sense, then such a doubt is reasonable. You must be satisfied to a moral certainty, in common, not to an absolute certainty, not to mathematical certainty, not to scientific certainty -- when you are satisfied to a moral certainty, then you no longer have reasonable doubt." (TR. 1195)

### 1. Use of phrase "moral certainty".

The Due Process Clause of the Fifth Amendment prohibits conviction on any proof less than that beyond a reasonable doubt, *Sullivan v. Louisiana*, 508 U.S. 275 (1993); *In re Winship*, 397 U.S. 358 (1970). The use of the phrase "moral certainty" in a reasonable doubt instruction was first criticized by the U.S. Supreme Court in *Cage v. Louisiana*, 498 U.S. 39 (1990) (per curiam), reversed on other grounds, *Estelle v. McGuire,* 502 U.S. 62 (1991). In *Cage*, the trial judge had instructed the jury that reasonable doubt meant "such doubt as would give rise to a grave uncertainty" and "an actual substantial doubt." More significantly for present purposes, the *Cage* instruction also contained the following sentence, "[w]hat is required is not an absolute or mathematical certainty, but a moral certainty."

The Supreme Court revisited the question in *Victor v. Nebraska*, 114 S.Ct. 1239 (1994), and found that use of this ambiguous phrase was saved by other language which impressed upon the fact finder the need to reach "a subjective state of near certitude of the guilt of the accused". However, the Supreme Court stated that it did not condone the use of the phrase. As modern dictionary definitions of moral certainty attest, the common meaning of the phrase has changed since its origin in the seminal case of *Webster v.*

2

*Commonwealth,* 59 Mass 295, 5 Cush. 295, 320 (1850). Thus the Supreme Court said that the "moral certainty" language has outlived its usefulness.

As the Supreme Court has explained, the concept of proof beyond a reasonable doubt means that the trier of fact must be convinced of the defendant's guilt "with utmost certainty." *In re Winship*, 397 U.S. 358, 364 (1970). Similarly, the Supreme Court has held that to convict, jurors must reach "a state of near certitude." *Jackson v. Virginia*, 443 U.S. 307, 315 (1979); *see also Lanigan v. Maloney*, 853 F.2d 40, 47 (1st Cir. 1988) (concept of proof beyond a reasonable doubt must "convey the critical point that, while absolute certainty is unnecessary, a belief in guilt at least *approaching* absolute certainty *was* required") (emphasis in original). The "utmost certainty" referred to in *Winship* refers to the highest level of certainty attainable in the domain of human affairs, involving factual questions depending on *empirical* evidence.

Presently, "moral certainty" has attained a primary meaning clearly *inconsistent* with the concept of proof beyond a reasonable doubt; it has come to be defined in terms of a "probability" and specifically contrasted to something being "proven." For example, the Longman Dictionary of the English Language (1984) defines it as "very probable though not proved; virtual (a moral certainty). *Id.* at 951, col. 2. Chambers 20th Century Dictionary (1983) defines moral certainty as "a likelihood great enough to be acted on, although not capable of being certainly proved." *Id.* at 820, col. 2. Merriam-Webster's Collegiate Dictionary (10th ed. 1993) defines "moral certainty" as "probable though not proved; virtual." *Id.* at 756, col. 2. Webster's New World Dictionary of American English (3d college ed. 1988, 1991) defines "moral certainty" as "[b]ased on strong probability. The Random House Webster's School & Office Dictionary (1993) includes the definition "based on strong probability: a moral certainty." *Id.* at 294, col. 2. The

3

Collins English Dictionary (3d ed.) includes among the meanings of "moral" the phrase "having a strong probability: a moral certainty." The Shorter Oxford English Dictionary on Historical Principles (1992) defines "moral" as "[u]sed to designate that kind of probable evidence which rests on a knowledge of character and of the general tendencies of human nature; often more loosely applied to all evidence which is merely probable."

The clear import of these definitions is that the phrase "moral certainty" in contemporary parlance means a level of certainty distinctly *below* that required by proof beyond a reasonable doubt. To the extent that "moral certainty" is currently understood as denoting only the probability or even a strong probability of a fact, it is inconsistent with the requirement of "utmost certainty" enunciated in *Winship*.

In *Sandoval v. California*, 511 U.S. 1, (1994), the companion case to *Victor v. Nebraska*, the Supreme Court adverted to this semantic evolution and acknowledged that it created problems for the phrases "moral evidence" and "moral certainty" standing alone; but held that in the context of the complete charge, which contained most of the elements of *Webster*, it did not convey the understanding that unconstitutionally diluted the standard of proof. Two factors were key in saving the construction: (1) the *Webster* sentence requiring an "abiding conviction, to a moral certainty of the truth of the charge (the Court noted that the foregoing would constitute a correct statement of the burden of proof even in the absence of the moral certainty phrase), and (2) language, again from *Webster*, which told the jury that their conclusion had to be based on the evidence in the case. Neither of these saving devices is present in the instant case, and thus the ambiguities and defects of "moral certainty" were not cured here.

Besides diluting the state's burden of proof, the inclusion of "moral certainty" in a reasonable doubt instruction invites the jury to base their decision on feelings rather than

4

facts, on emotion rather than on evidence. See *Perez v. Irwin*, 963 F.2d 499 (2d Cir. 1992) ("the concern is that the use of the words [moral certainty] might lead a jury to reach a verdict based on feelings rather than on the facts of the case"); This occurs because the phrase "moral certainty" has acquired an additional meaning, apart from the mere "probability" definition noted above. A cluster of current dictionary definitions define "moral certainty" as a strong personal belief in a particular fact or idea in the *absence* of or *regardless* of objective evidence. For example, Webster's Third New International Dictionary - Unabridged (1986) defines "moral certainty" as "based on an inner conviction"; and "virtual rather than actual, immediate, or completely demonstrable." *Id.* at 1468, col. 3; *see also* The American Heritage Dictionary of the English Language 1173, col. 2 (3d ed. 1993) (defining moral certainty as "[b]ased on a firm conviction, rather than upon the actual evidence: *a moral certainty*") (emphasis added); *Webster's II New Riverside Dictionary* 769, col. 1 (1984, 1988) (moral certainty defined as "[b]ased on strong likelihood of conviction rather than on solid evidence").

### 2. Invitation to jurors to assign a reason.

The "moral certainty" language is bad enough standing alone; in context here, it is clear that its harmful effect was given "full sweep". The first paragraph of the charge dealing with the definition of reasonable doubt states:

> "It is not: beyond all doubt. It is not: beyond a possibility of doubt. It is a doubt which appeals to reason. It is not a capricious doubt. It is not a speculative doubt. It is a doubt for which you can assign [a] logical and cold reason."

This portion of the charge only adds to the confusion. Most egregiously, it invites the jurors to "assign a logical and cold reason." By clear implication, the jurors would look to the *defense* for such a reason to doubt the prosecution's case. Contrast this language with the language of *Webster*: "[reasonable doubt] is that state of the case,

5

which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say that they feel and abiding conviction, to a moral certainty, of the truth of the charge." In the trial court's formulation, the doubt is not something that "arises" from the evidence or "abides" after consideration of all the evidence; rather, it is something to which the jury is to "assign" a reason. Where should this reason come from? The logical answer is, from the defense.

This is particularly prejudicial when, as in this case, the defense has presented no testimony. Elsewhere in the charge, the trial judge comments on this fact extensively, while instructing the jury to take no adverse inference from it. But this latter instruction is hollow indeed when the very definition of reasonable doubt asks the jury to assign reasons.

### 3. Syntactical confusion

There is also the potential for a lot of semantic and syntactical confusion in these four opening sentences of the discussion of reasonable doubt, numbered here for purposes of the discussion below:

"(1) Observe the term: 'reasonable doubt.' (2) It is not: beyond all doubt. (3) It is not: beyond a possibility of doubt. (4) It is a doubt which appeals to reason (5) It is not a capricious doubt. (6) It is not a speculative doubt. (7) It is a doubt for which you can assign [a] logical and cold reason."

The second, through seventh sentences all start with the pronoun "it," a neuter pronoun which stands for a noun or noun phrase. The semantic problem is that the "it" at the beginning of the fourth through seventh sentences represents a completely different referent than the "it" which started the second and third. The "it" at the beginning of the second and third sentences stands for the whole standard, "beyond a reasonable doubt," and contrasts these with other rejected formulations which would have the effect of increasing the prosecution's burden of proof. Both of these sentences say to the jury, in

6

effect: the burden is not *this* high. But in the fourth sentence, without warning, the "it" suddenly becomes the doubt itself. This is essentially the inverse of the meaning of the first two its.

Many jurors would not catch this semantic shift. They would hear the third sentence as "beyond a reasonable doubt is a doubt which appeals to reason," thus keeping the referent of the "it" constant. Or they would hear a "not" which was part of the syntax of the earlier sentences: it is not a doubt which appeals to reason. This problem is reinforced by the fact that the two sentences immediately following, 5 and 6, also contain "not".

Sentences 5 and 6 also are problematic. They mirror the earlier "not" sentences inversely. Where the earlier sentences said, in effect "the certainty required for conviction is not this great," these sentences say, "the doubt required for acquittal is not this small." All four sentences, in other words, point in the same direction, in favor of the prosecution, but do so by opposite rhetorical devices. There is no hint of *Webster's* balanced language emphasizing the large degree of certainty required for conviction:

> "For it is not sufficient to establish a probability, though a strong one arising from the doctrine of chances, that the fact charged is more likely to be true than the contrary; but the evidence must establish the truth of the fact to a reasonable and moral certainty; a certainty that convinces and directs the understanding, and satisfies the reason and the judgment, of those who are bound to act conscientiously upon it."

Nothing in the instant charge remotely captures the sense of this portion of *Webster*; the jury received no hint of the requirement that they be convinced before they could convict.

### 5. Harmlessness.

A defect in the definition of reasonable doubt is the kind of "structural error" which is not subject to harmlessness analysis, *Sullivan v. Louisiana*, 508 U.S. 275, 113

(1993). Even if this were not the rule, the failure to adequately define the concept of reasonable doubt had a prejudicial impact in this case, since the key factual issue for the jury was whether the prosecution had proven that the shooting of Officer Callahan occurred during the commission of an attempted robbery. The trial judge's instructions on this point, pp. 1203-05 of the trial transcript, do not require the proof of the connection between the attempted robbery and the shooting to be made beyond a reasonable doubt. The evidence on this point was quite ambiguous, even according to the recitation of facts in the opinion on direct appeal. See *Commonwealth v. Ladetto*, 349 Mass 237, 239, 207 N.E.2d 536, 538 (1965). A clerk at the A&P grocery store testified that the defendant had put a gun in his back and asked him "where the money was." When informed that it had been taken to the bank, defendant replied "it's all right, we'll get the cash drawers." A customer noticed the clerk acting unusually, left the store and flagged down a police cruiser occupied by Officers Callahan and Hood. Officer Callahan entered the store to investigate, and was shot by defendant as he came through the door, a shot which ultimately proved fatal. On these facts, the jury had to decide whether the robbery attempt was still preceding when the shot was fired or whether defendant had ceased in the robbery attempt.

### 6. Retroactivity.

New rules should not apply retroactively unless they fall within either of two very limited exceptions. *Teague v. Lane,* 489 U.S. 288, 311 (1989). The two exceptions to the rule of non-retroactivity are those rules (1) which place "certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe" or (2) addresses a procedure of "fundamental fairness" which is "implicit in the concept

of ordered liberty" and "without which the likelihood of an accurate conviction is seriously diminished" Id., at 311, 312-313.

The misdefinition of reasonable doubt, as a bedrock principle of constitutional jurisprudence, *Sullivan, supra,* falls squarely in the latter exception, *Adams v. Aiken* 41 F.3d 175 (4th Cir. 1994), *cert. den.,* 511 U.S. 1124 (1995); *Humphrey v. Cain*, 120 F. 3d 526 (5th Cir 1997); *Nutter v. White* 39 F. 3d 1154 (11th Cir 1994); *Harmon v. Marshall* 57 F. 3d 763 (9th Cir 1995). Thus even though the rule of *Cage* may be regarded as new, it must be applied retroactively to convictions which were final when it was decided.

### A. The trial court's instructions on the presumptions of malice unconstitutionally shifted the burden of proof.

### 1. The instruction was unconstitutional.

The trial court instructed the jury that murder was defined as the killing of a human being with malice aforethought (p. 1196) and then defined "malice" as follows (sentences numbered for purpose of following discussion):

"(1) What is the meaning in the law of the word, 'malice'? (2) It means every unlawful motive which may be inferred from an unlawful killing. (3) When there are no circumstances disclosed in the evidence tending to show justification or excuse, then there is nothing to rebut the natural implication of malice.
(4) The word 'malice,' as used in law, does not imply necessarily ill will toward the person killed. (5) Its meaning is more comprehensive. (6) It includes any intent to inflict injury upon another without legal excuse or justification." (p. 1197)

As noted in the preceding section, the Due Process Clause of the Fourteenth Amendment prohibits conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime charged, *In re Winship*, supra, at 364. A necessary corollary of this principle is that a judge may not use "evidentiary presumptions in a jury charge that have the effect of relieving the State of its burden of persuasion beyond a reasonable doubt of every essential element of a crime." *Francis v. Franklin*, 471 U.S. 307, 313 (1985); see *Sandstrom v. Montana*, 442 U.S. 510, 520- 524 (1979).

In the instant case, the trial judge did not use the word "presume," but he nevertheless set up a presumption. In sentence (2), he defined malice as "every unlawful motive which can be inferred from an unlawful killing." This is as broad a definition as is conceivable; it would allow a conviction of murder for a motorist who fatally injures a pedestrian while leaving an overtime meter to avoid a parking ticket. While the language of this is mirrored in cases of that era, see *Commonwealth v. Boyajian* 344 Mass. 44, 48, 181 N.E.2d 577, 580 (1962)(malice " includes 'every * * * unlawful and unjustifiable motive' and is 'implied from any deliberate or cruel act against another'"), it is so comprehensive as to give the jury little definitional guidance and has been thoroughly repudiated by the Supreme Judicial Court, see *Commonwealth v. Grey*, 399 Mass 469, 505 N.E.2d 171 (1989).

In sentence (3), the court talks about a "natural implication" of malice. From what facts would such a "natural implication" arise? Apparently from any "unlawful killing" referred to in sentence (2). What makes the killing unlawful? The presence of malice. Where does the malice come from? The fact of the unlawful killing. Clearly this circularity between sentences (2) and (3) rhetorically embraces all homicides, except those carved out by the first clause of (3) in which the "circumstances... tend to show justification or excuse."

Thus instead of placing the burden on the prosecution to show beyond a reasonable doubt that a particular homicide was committed with malice, this instruction says that any "unlawful killing" by its "natural implication" includes malice, except those justified or excuse. It is more likely than not that a jury hearing such an instruction would believe, not that the prosecution had the burden of showing malice, but that the

defense had the burden of showing justification or excuse. This has been recognized in recent Massachusetts cases.

In *Commonwealth v. Gibson,* 424 Mass. 242, 675 N.E.2d 776 (1997), the Supreme Judicial Court found that a jury instruction which would have allowed the jury to infer malice from an unexplained use of a gun violated *Francis* even though it did not use the word "presume" (relief denied on the ground that the error was harmless). The instruction here is more egregious that in *Gibson,* for at least the inference set up there proceeded from a specific hypothetical act, the use of a gun. The fact proven, the use of the weapon, is at least nailed down, and there is some logical relationship between it and the fact to be inferred from it, malice. See *Carella v. California*, 491 U.S. 263, 266 (1989)(Scalia, J., concurring). But there is no such relationship disclosed in the instant instruction; all unlawful killings imply malice.

It is true that sentences (4), (5) and (6) narrow this interpretation somewhat. Sentence (4) denies an equation of malice with ill-will, sentence (5) asserts that its meaning is broader, and sentence (6) ties it to an intent to injure. This is at least somewhat narrower than "every unlawful killing" of sentence (2), but it still embraces every intent to injure which does not fall within the two specified exceptions, and therefore carries with it an implication that it is up to the defense to prove that the case falls within those exceptions. The instruction was unconstitutional, in that it was likely that the jury understood it as providing that malice was established by the proof of the homicide, and the burden was on the defense to prove justification or excuse.

**2. Harmlessness.**

A *Francis*-type error is subject to harmless-error analysis. In *Yates v. Evatt*, 500 U.S. 391, 401 (1991) the Court made clear that a reviewing court considering the alleged

11

harmlessness of burden shifting malice instructions "[f]irst . . . must ask what evidence the jury actually considered in reaching its verdict . . . and must then weigh the probative force of that evidence as against the probative force of the presumption standing alone."

The Court went on to say that:

"To satisfy *Chapman* [v. California, 386 U.S. 18 (1967)]'s reasonable doubt standard, it will not be enough that the jury considered evidence from which it could have come to the verdict without reliance on the presumption. Rather, the issue under *Chapman* is whether the jury actually rested its verdict on evidence establishing the presumed fact beyond a reasonable doubt, independently of the presumption.

In the instant case, even assuming it was proven that the petitioner shot the victim police officer as that officer entered the store to investigate, it is still a very open question as to what petitioner's state of mind was at the time the fatal shot was fired. It is possible that he wished to scare the officer away, to cause him to duck for cover and thus enable the petitioner to escape before his identity could be discovered. While a jury might well infer an intent to kill or seriously wound the officer from the fact of the fatal shooting, such an inference is not a necessary one, and it is quite possible on the state of the record that the jury found malice just because the defense did not affirmatively advance a justification or excuse.

The harmlessness question does not involve the legal sufficiency of the evidence. Thus it is not dispositive of the question that the malice of the robbery attempt in petitioner's case might be sufficient under the felony-murder doctrine to apply to the homicide as well. The question, as *Yates, supra* specified, is what the actual trial jury did with the unlawful presumption. On this record, it cannot be said with confidence that the jury did not rely on the presumption in reaching a verdict of guilty of first degree murder. Thus the conviction must be reversed.

**C. The jury was never instructed that the Commonwealth bore the burden of proving the degree of the murder beyond a reasonable doubt.**

As noted above, petitioner had a Due Process right to have the jury find him guilty beyond a reasonable doubt as to every element of the murder, *Winship, supra.*; United States v. Gaudin, 115 S.Ct. 2310 (1995). One element of first degree murder was the presence of deliberate premeditation. In this case, the trial court told the jury generally that the presumption of innocence prevails until there is "proof of defendant's guilt beyond a reasonable doubt" (T.R. 1194) and later defined deliberate premeditation, but *never told the jury that deliberate premeditation must be proven beyond a reasonable doubt.*

Of course, as noted above, deliberate premeditation was one of two alternative routes to a finding of guilty of murder in the first degree, the other being murder in the commission of the crime of attempted robbery. But this prong was also defectively charged. At T.R. 1204, the court instructed that the jury must determine, under this theory, whether the murder took place while the robbery was going on, and gave them some instructions on the indicia of conclusion of an attempted robbery. But again, the court *never told the jury that the prosecution must prove beyond a reasonable doubt that the murder occurred in the commission of the attempted robbery.*

The difference between first and second degree murder, at the time, was the difference between death and life. These are the most important elements of the crime from a defendant's viewpoint, and for the trial court not to specify the proper burden of proof on the elements distinguishing first from second is not only to violate petitioner's rights under the Due Process clause, but to do so in the most prejudicial manner.

**D. The combination of the foregoing errors with other factors renders the conviction fundamentally unfair.**

Even if none of these three constitutional errors standing alone would be sufficient to grant this petition, in combination they compel it. Other parts of the charge reinforced the impression that the petitioner had something to prove. The petitioner presented no evidence. While the trial court advised the jury that this fact should not be held to "create a presumption" against him (T.R. 1211), but did not go on to explain that this was because the prosecution bore the burden of proving every element of the offense beyond a reasonable doubt. Moreover, in the discussion of consciousness of guilt (T.R. 1215), the court gave examples of evidence which could be taken as consciousness of guilt and then added the "important qualification" that such conduct,

"may be explained by the accused as having been prompted by fear or some other good reason. His conduct is open to proof by him that what he did was consistent with innocence; and if his conduct is consistent with innocence, the proffered evidence of consciousness of guilt has no weight."

It is a violation of a defendant's Fifth Amendment right not to testify to have the exercise of that right be the subject of comments from the prosecutor, *Griffin v. California*, 380 U.S. 609 (1965), or the trial judge, *Lakeside v. Oregon*, 435 U.S. 333 (1978). The court's comments quoted above were very close to a Fifth Amendment violation, for the court certainly knew in giving the instructions that no explanation of petitioner's conduct had been forthcoming from the defense. Once again, the court seemed to be placing a burden of persuasion on the defense.

Finally, the court expended a great deal of time reviewing and summarizing the evidence. Petitioner does not here point to any specific distortion of the evidence, but a lengthy summary of the evidence in a case where the only evidence is presented by the prosecution has the inevitable effect of favoring the prosecution if only by reminding the jury of what the witnesses said.

All of these factors in combination resulted in a fundamentally flawed trial.

14

Respectfully submitted,

*[signature]*

Robert L. Sheketoff
One McKinley Square
Boston, MA  02109
(617) 367-3449
BBO# 457340