UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| PETER LADETTO, </br>     Petitioner, | ) </br> ) </br> ) </br> ) |  |
| v. | ) </br> ) | Civil Action No. 04-11656-RCL |
| TIMOTHY HALL, </br>     Respondent. | ) </br> ) </br> ) |  |

**MEMORANDUM IN OPPOSITION TO
PETITIONER'S MOTION FOR CERTIFICATE OF APPEALABILITY**

Respondent submits this memorandum in opposition to Petitioner's motion for a certificate of appealability (Paper No. 12) and in response to this Court's Order of April 14, 2005.

**I.    The Certificate of Appealability Standard**

Petitioner may receive a certificate of a appealability only if he can make a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  Where, as here, the petition is dismissed on procedural grounds, Petitioner must show both that reasonable jurists would find the correctness of the procedural ruling debatable, and that reasonable jurists would find it debatable whether Petitioner has stated a valid claim of the denial of a constitutional right.  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

**II.  This Court's Ruling That the Petition is Untimely is Not Reasonably Debatable.**

The one-year statute of limitations for filing habeas corpus petitions is tolled for the time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim "is pending." 28 U.S.C. § 2254(d)(2).  More than one year passed between the S.J.C.'s denial of Petitioner's Gatekeeper Petition and the filing of this petition. Thus, this petition is untimely unless Petitioner's 1965 new trial motion remained "pending" from

June, 2003 to July, 2004, notwithstanding the denial of two subsequent new trial motions that abandoned the claims raised in the 1965 motion (and indeed denied that such a motion had ever been filed).

Petitioner moved three times for a new trial in the trial court following the conclusion of direct review. In December, 1965, Petitioner sought a new trial, arguing that his Sixth Amendment right to counsel had been violated when he was questioned without being afforded an attorney. Supp. App. at E:32-37. Having obtained a stay of his death sentence based upon the motion, Supp. App. at E:32, Petitioner pursued the matter no further in the trial court, instead seeking a writ of error in the S.J.C., litigation that resulted in the vacation of the death sentence by the U.S. Supreme Court in 1971. Supp. App. at E:38-42. When Petitioner next returned to the trial court in 1998, after an absence of more than thirty years, he did not suggest that he considered the first motion still pending, but instead affirmatively represented that he had "never filed a Motion for New Trial before." Supp. App. at E:50. The Commonwealth responded to the 1998 motion by arguing that its claims had been waived by the failure to raise them, *inter alia*, in the 1965 new trial motion. Supp. App. at E:88. The trial court was thus aware of the 1965 motion when it denied Petitioner a new trial in 1999, and noted that it was never ruled on, and that Petitioner disputed filing such a motion. Supp. App. at B:10. Petitioner filed a third new trial motion in 2001, claiming that he had not received notice of the denial of the second motion. Supp. App. at E:117-19. The trial court again denied a new trial, vacating its 1999 denial order and reinstating it as of October, 2002. Supp. App. at B:7-8.

Petitioner's position–that the 1965 new trial motion has now entered its fortieth year of "pending" in the trial court–is not reasonably supportable. While Respondent would suggest that the grounds set forth in the motion were, as a practical matter, abandoned long before 1998, there

is no reasonable way to read the second new trial motion other than as explicitly abandoning the grounds raised in the first motion. Where two motions are filed each seeking the same relief from the court, but for different reasons, there are two ways the court could interpret the second motion. The court could read the second motion as merely providing additional reasons for granting the relief sought in the initial motion. Alternatively, the second motion could be read as indicating that movant wished to proceed on different grounds than those raised in the first motion and no longer wished to pursue the earlier grounds for relief. Here, there is no doubt that Petitioner intended his 1998 motion to contain all of the grounds he wished to seek a new trial on, and that the court understood him to be affirmatively disavowing any claim for relief based upon the 1965 motion.

Moreover, regardless of how the motion is read, the court's 1999 order refusing to allow a new trial would have to be read in a determinedly unrealistic fashion to support Petitioner's tolling claim. Regardless of how many motions Petitioner filed, he was seeking just one thing–a new trial. When the court denied that relief, the only plausible way to read the order is that it was denying a new trial on all the grounds Petitioner had raised. The court's failure to explicitly address the 1965 grounds, despite referring to the possible existence of the unruled motion, can only be interpreted as an (entirely reasonable) belief that Petitioner was no longer pursuing those grounds. Any other interpretation flies in the face of common sense. The only reading consistent with Petitioner's theory is that the trial court purposely decided only some of the issues pending before it and decided to reserve for some other time the issues raised in the 1965 motion. The order cannot reasonably be read this way; nothing remains pending in the trial court.

Petitioner abandoned the grounds in the 1965 motion (at the absolute latest), when he disavowed ever pursuing such grounds, in 1998. Regardless, the only reasonable interpretation of

the trial court's 1999 order is that it resolved the entire question of whether Petitioner should receive a new trial and that nothing remained pending before the court at that time or, for that matter, today. There is no reasonable basis to disagree with this court's decision that the petition was untimely.

**III.     None of Petitioner's Claims, Even Debatably, Shows That he was Denied a Constitutional Right Retroactively Applicable on Collateral Review.**

The petition raises three Due Process challenges to the jury instructions (which are reproduced in full at Supp. App. C:1189-1227) that rely on cases long post-dating Petitioner's 1964 trial. Petitioner's Initial Memorandum (Paper No. 3) [hereinafter "Pet. Mem."] at 1-12. To grant the certificate, this Court must specifically find that one or more of these claims substantially demonstrates the denial of a constitutional right, and specify which claim meets that standard. 28 U.S.C. § 2253(c)(1)(A), (3). The certificate should be denied. None of these jury instruction claims shows, even debatably, such a fundamental flaw as to deny Petitioner a constitutional right made retroactively applicable on collateral review to his forty-year-old trial.

### A. The Reasonable Doubt Instruction

First, Petitioner argues that the jury instructions failed to require the jury to convict Petitioner only if they found him guilty beyond a reasonable doubt. Pet. Mem. at 1-9. Reading them as a whole, however, the instructions, as the Single Justice held: "adequately conveyed the substance of [the] concept [of reasonable doubt], in solemn terms that did nothing to detract from their seriousness." Supp. App. at A:1. Petitioner does nothing to show that this decision was contrary to or an unreasonable application of clearly established Supreme Court law, 28 U.S.C. § 2254(d)(1), made applicable on federal collateral review of a state court judgment. *See Teague v. Lane*, 489 U.S. 288 (1989).

Petitioner's first claim is that the state courts' decision was contrary to *Cage v. Louisiana*, 498 U.S. 39 (1990) (per curiam), because the instructions here equated the standard of proof to satisfaction to "a moral certainty," a term that also appeared in the *Cage* instruction. Pet. Mem. at 2-5. This case is quite unlike *Cage*. As the Court held there, the question is one of context and what a reasonable juror would have believed the charge as a whole to mean about the level of doubt that required an acquittal. *Id*. at 41. In *Cage*, the defect was not merely the use of the term "moral certainty," but the fact that the instructions equated this level of certainty with the absence of "grave uncertainty" or "actual substantial doubt." *Id*. Since a "grave" or "substantial" doubt was reasonably interpreted as greater than a "reasonable doubt," the Court found the instruction inconsistent with Due Process. *Id*.

Petitioner does not suggest that the court here explicitly denigrated the level of certainty required to convict, but instead suggests that the meaning of the term "moral certainty" has evolved such that use of the term is, in and of itself, an error of constitutional proportions (at least if the term is unaccompanied by any further explanatory language). Petitioner suggests that "moral certainty" no longer means something like near certainty based upon the evidence, but instead invites the jury to base their judgment on probability or morality. As an initial matter, Petitioner's assortment of partial definitions from dictionaries in the mid-1980's and 1990's sheds no light on what the term moral certainty meant to a reasonable juror in 1964. And the fact that such definitions compare moral certainty to probability is, as the Supreme Court held in *Victor v. Nebraska*, unproblematic in and of itself, since reasonable doubt is a probabilistic determination. 511 U.S. 1, 14 (1994).

Whatever moral certainty might have meant in isolation in 1964, the instruction did not leave the jury to speculate as to its meaning; to the contrary, the court quite explicitly defined "moral

5

certainty" to mean the absence of reasonable doubt. Read fairly and naturally, the court instructed the jury that 1) a reasonable doubt is one based upon reason; and 2) that moral certainty is not absolute or mathematical certainty, but 3) is instead that level of certainty that exists when no reasonable doubt remains. Supp. App. at E:1195. The court, essentially, defined moral certainty as a level of certainty below absolute certainty, but beyond the point at which any common sense, non-speculative doubt remains. This is not clearly a significantly lower standard than absence of reasonable doubt. And the court made quite clear that "moral certainty" was not a warrant to the jury to base its verdict on some judgment about morality, rather than on the evidence. Rather, the court emphasized that it was to employ logic, cold reason, and common sense in judging whether reasonable doubt existed. Even assuming that the phrase "moral certainty" had so changed in understanding by 1964 that it meant something other than the level of certainty associated with a lack of reasonable doubt, the court instructed the jury quite clearly that this is what the phrase meant. The instruction could not reasonably have been misunderstood by a jury in 1964 to authorize conviction on a level of proof less than "beyond a reasonable doubt," and the S.J.C. did not contradict or unreasonably apply *Cage* or *Victor* in so holding.

      Petitioner's other claims regarding the reasonable doubt instruction are even less availing. Petitioner's claim that the instruction invites the jury to require the defense to produce "a reason" for their doubts, Pet. Mem. at 5-6, simply rewrites the instruction that was given. The court did not tell the jury that they had to assign "a logical and cold reason" to their doubt, but made clear that a reasonable doubt was one based on "logical and cold reason," as opposed to a capricious or speculative one. Supp. App. at E:1195. Contrasting a doubt based upon reason and logic with one based upon speculation or caprice in no way lessens the burden of proof, and the Supreme Court has

6

made quite clear that requiring a reasonable doubt to be based upon reason is proper. *Victor*, 511 U.S. at 17.

Finally, Petitioner claims that the reasonable doubt instruction was rhetorically unbalanced, because it failed to capture the sense of *Webster* that the jury must be convinced before they convict. Pet. Mem. at 6-7. Even assuming the doubtful validity of rhetorical imbalance as a constitutional defect, the instructions read as a whole do not meet that description. Elsewhere in instructions, for instance, the court indicated that evidence supporting a finding beyond a reasonable doubt meant evidence not just consistent with guilt, but inconsistent with every reasonable hypothesis, except guilt, and that a finding beyond a reasonable doubt, is more than just a possibility or even probability of guilt. Supp. App. at E:1192.

Ultimately, the question of whether the reasonable doubt instruction here comports with modern standards is of little moment, since this kind of semantic dissection of shades of instructional meaning is not the kind of bedrock issue of fundamental fairness that the Supreme Court has made retroactively applicable against the states on collateral review. As the Court has recently reiterated, the second exception to *Teague* is surpassingly narrow, so much so that the Court has never found a rule that meets its requirements, and has even expressed skepticism that such new rules remain to be discovered. *Beard v. Banks*, 124 S. Ct 2504, 2513-14 (2004). Petitioner's *Cage* claim fails even to approach the level described in *Banks* for retroactive applicability.

### B. The Malice Instruction

Petitioner next argues that the jury instruction on the element of malice, Supp. App. at E:1196-98, was unconstitutional because a jury would understand it to mean that a killing was presumptively malicious unless the defense proved justification or excuse. Pet. Mem. at 9-11.

Again, Petitioner is complaining about an instruction that was not given. The court instructed the jury that it was permitted, not required, to infer malice from the fact of an unlawful killing without justification or excuse. Permissive inferences simply do not present the same Due Process problems as evidentiary presumptions, as *Franklin v. Francis* itself makes clear: "A permissive inference violates the Due Process Clause only if the suggested conclusion is not one that reason and common sense justify in light of the proven facts before the jury." 471 U.S. 307, 314-15 (1985). Petitioner offers nothing to suggest that the inference of legal malice from the unlawful killing of person is unreasonable, especially where, as here, there is no evidence or claim of justification or excuse. Petitioner has not set forth even a debatable claim that the S.J.C. contradicted or unreasonably applied *Francis*, much less that the rule of *Francis* is so fundamental as to be retroactively applicable under *Teague*.

### C. Proof of the Degree of Murder Beyond a Reasonable Doubt

Finally, Petitioner argues, Pet. Mem. at 13, that the court failed to specifically instruct the jury that it had to find the element of deliberate premeditation beyond a reasonable doubt in order to convict him of first degree, as opposed to second degree, murder. Petitioner does not dispute the Single Justice's characterization of the instructions as generally making clear that the burden of proof was generally on the Commonwealth and her finding that the court repeatedly instructed that this burden was met only by proof beyond a reasonable doubt. Supp. App. at A:2. Petitioner has cited no law, much less clearly established Federal law (retroactively applicable on collateral review) that requires a court to repeat the burden of proof instruction every time it describes an element of an offense. Petitioner has made no reasonably debatable showing of the denial of Due Process as to this claim.

   D.   *The Instructions Did not Have a Substantial and Injurious Effect on the Verdict.*

On collateral review, even constitutional errors do not require a new trial unless they had a substantial and injurious effect on the verdict. *Brecht v. Abrahamson*, 507 U.S. 619 (1993). Here, as the Single Justice held, the evidence of Defendant's guilt, based upon eyewitness testimony and the Defendant's own confession, was "overwhelming." Supp. App. at A:3. As the Single Justice found, neither a different malice instruction nor a reiteration of the burden of proof instruction as to deliberate premeditation could reasonably have produced a different verdict, based upon the evidence presented at trial. Even if the instructions could conceivably be deemed erroneous in those respects, there was no substantial and injurious effect on the jury's verdict and any error was harmless.

## CONCLUSION

For these reasons, the motion for certificate of appealability should be denied.

   Respectfully submitted,

   THOMAS F. REILLY
   ATTORNEY GENERAL

   /s/ David M. Lieber
   David M. Lieber (BBO# 653841)
   Assistant Attorney General
   Criminal Bureau
   One Ashburton Place
   Boston, Massachusetts  02108
   (617) 727-2200 ext.2827

   ATTORNEYS FOR RESPONDENT

Dated: May 16, 2005