UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
PETER LADETTO,                              )
                Petitioner,          )
                                         )
      v.                             )
                                         )   CIVIL ACTION NO. 04-11656-RCL
TIMOTHY HALL,                               )
                Respondent.        )
_____)

MEMORANDUM AND ORDER
ON PETITION FOR THE ISSUANCE OF CERTIFICATE OF APPEALABILITY

LINDSAY, District Judge.

### Introduction

Before the court is a petition of Peter Ladetto (the "petitioner" or "Ladetto") for the issuance of a certificate of appealability pursuant to 28 U.S.C. § 2253(c) and Fed. R. App. P. 22(b). On April 11, 2005, I dismissed Ladetto's petition for habeas corpus relief made pursuant to 28 U.S.C. § 2254, on the ground that such relief was barred by the applicable statute of limitations.[1] I rejected the petitioner's contention that the limitations period was tolled because an unresolved motion for a new trial filed in 1965 is a "pending" motion under 28 U.S.C. § 2244(d)(2). Rather, I ruled that "because the unresolved 1965 motion for a new trial did not raise the issues advanced on the present petition, it is not a 'pending' application for state post-conviction relief within the meaning of 28 U.S.C. § 2244 (d)(2)." *See* April 11, 2005 Order.[2]

---

[1] I dismissed Ladetto's habeas petition solely on procedural grounds; I did not reach the underlying claims of the petition.

[2] In the 1965 motion, petitioner claimed that the police violated his right to counsel under the Sixth Amendment because they questioned him and elicited incriminating statements from him

1

In addition, I noted that even if the 1965 motion were a pending application that tolled the statute of limitations on the present habeas claims, the habeas petition would nevertheless be dismissed because the petitioner had not exhausted his remedies in state court as to the claim raised in that motion.

Thereafter, on April 12, 2005, Ladetto filed a motion for a certificate of appealability. In response, and pursuant to the teaching of *Slack v. McDaniel*, 529 U.S. 473, 484 (2000), I directed the parties to submit supplemental memoranda addressing whether a certificate of appealability is appropriate both with respect to the statute of limitations question and as to the petitioner's underlying claim for habeas relief. The parties filed the supplemental memoranda as directed.

## **Discussion**

"When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a certificate of appealability should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* at 484. For reasons discussed below, I deny the petitioner's motion for issuance of a certificate of appealability because, assuming *arguendo* that jurists of reason would find it debatable whether my procedural ruling was correct, such jurists would not debate the conclusion that I have reached that the present habeas petition does not state a valid claim of the denial of a constitutional right.

---

outside the presence of his counsel.

On March 18, 1964, the petitioner was convicted of first-degree murder in the killing of a police officer during a robbery of a grocery store. The jury also convicted the petitioner of assaulting an employee of the grocery store with intent to rob. The petitioner was sentenced to death on the murder conviction and received a sentence of eighteen to twenty years on the assault conviction. On June 8, 1971, the United States Supreme Court reversed his conviction, insofar as it imposed the death penalty, on the ground that the composition of the jury violated his rights under the Sixth and Fourteenth Amendments. *Ladetto v. Massachusetts*, 403 U.S. 947 (1971). As a result, on November 22, 1971, the trial court revoked the petitioner's capital sentence and sentenced him instead to life imprisonment.

In the present petition, the petitioner raises four due process challenges to the jury instructions in his 1964 case. First, he claims that the trial judge's inclusion of the term "moral certainty" in the final instructions to the jury violated the petitioner's right to due process because it allowed the jury to convict him by a standard short of beyond a reasonable doubt. The judge instructed the jury that: "If there is a doubt which appeals to your common sense, then such a doubt is reasonable. You must be satisfied to a moral certainty, in common, not to absolute certainty, not to mathematical certainty, not to scientific certainty – when you are satisfied to a moral certainty, then you no longer have reasonable doubt." Transcript of Jury Charge ("Tr."), Supplemental Appendix C, at 1195.

It is a well-established principle of federal constitutional law that "the Due Process Clause requires the State in criminal prosecutions to prove guilt beyond a reasonable doubt." *Cupp v. Naughten*, 414 U.S. 141, 147 (1973) (citing *In re Winship*, 397 U.S. 358 (1970)). Thus, a jury instruction that "places an improper burden on the defense and allows the jury to convict despite

3

its failure to find guilt beyond a reasonable doubt" violates a defendant's constitutional rights. *Cool v. United States*, 409 U.S. 100, 102-03 (1972).

There is no question that "[e]quating the concept of reasonable doubt to 'moral certainty' may be, in isolation, reversible error." *Gilday v. Callahan*, 59 F.3d 257, 262 (1st Cir. 1995) (citations omitted). Both the Supreme Court and the First Circuit strongly have discouraged the use of the "moral certainty" phrase in jury instructions. *See Victor v. Nebraska*, 511 U.S. 1, 16 (1994) (explaining that "we do not condone the use of the phrase"); *United States v. Indorato*, 628 F.2d 711, 721 (1st Cir. 1980) ( "[W]e have indicated our uneasiness with this phraseology . . . .") In *Victor*, the Supreme Court explained that it had previously held that jury instructions containing the "moral certainty" language are constitutionally deficient in a case where "the jurors were simply told that they had to be morally certain of the defendant's guilt [and] there was nothing else in the instruction to lend meaning to the phrase." *Victor*, 511 U.S. at 16 ( citing *Cage v. Louisiana*, 498 U.S. 39, 41 (1990) (per curiam)). The Court in *Cage* had noted that the jury instructions in that case "equated a reasonable doubt with a 'grave uncertainty' and an 'actual substantial doubt,' and stated that what was required was a 'moral certainty' that the defendant was guilty." *Cage*, 498 U.S. at 41. The Court found that these statements, when viewed as a whole and combined with the "moral certainty" phrase, "suggest[ed] a higher degree of doubt than is required for acquittal under the reasonable-doubt standard." *Id.*

In *Victor v. Nebraska*, however, the Court rejected two different attacks on jury instructions that included the "moral certainty" phrase. The Court framed the constitutional inquiry as "whether there is a reasonable likelihood that the jury understood the instructions to allow conviction based on proof insufficient to meet the *Winship* standard." *Victor*, 511 U.S. at

4

6. The Court held that the "moral certainty" and "moral evidence" language was not constitutionally problematic because the trial judge had reminded the members of the jury that "their conclusion had to be based on the evidence in the case" and that they should not be swayed by "mere sentiment, conjecture, sympathy, passion, prejudice, public opinion or public feeling." *Id.* at 16. In addition, the court concluded that the "moral certainty" language, as used in the trial judge's instruction, effectively equated "moral certainty" with proof beyond a reasonable doubt, and the trial judge repeatedly instructed the jurors to convict the defendant solely on the basis of the evidence before them. *Id.* at 21-22. In doing so, the Court reiterated that "moral certainty language cannot be sequestered from its surroundings." *Id.* at 16. Thus a court reviewing instructions containing the moral certainty language must evaluate the instructions in the context of the jury instructions as a whole and determine whether the language "impress[ed] upon the factfinder the need to reach a subjective state of near certitude of guilt of the accused." *Id.* at 15 (quoting *Jackson v. Virginia*, 443 U.S. 307, 315 (1979)).

In reviewing the jury instructions in this case, I conclude that the instruction given at the petitioner's trial, when viewed as a whole, adequately conveyed the meaning of proof beyond a reasonable doubt. First, as in *Victor*, the trial court here specifically instructed the jury *on at least three separate occasions* to view the entire evidence in assessing Ladetto's guilt.

> It will be for you to determine *upon all evidence* whether you are convinced beyond a reasonable [doubt] that [the defendant] attempted to commit the crime of robbery . . . .

> The Commonwealth has sought to persuade you . . . that *by reason of the evidence* which it has presented (sic) the defendant . . . is guilty of murder in the first degree beyond a reasonable doubt.

5

> The defendant has a right to have the Commonwealth prove that he is guilty beyond a reasonable doubt. This is his absolute right. It is equally the right of the Commonwealth to have a verdict of guilty returned if, upon *a just consideration of all of the evidence*, you reach the conclusion that the Commonwealth has proved its case against the defendant beyond a reasonable doubt.

Tr. at 1205, 1216, 1219 (emphasis added). The trial court's emphasis that the jury consider all of the evidence is similar to the instructions in *Gilday*, where the First Circuit upheld the constitutionality of jury instructions that "explicitly told the jurors that their decision had to be based on the evidence in the case, minimizing the possibility that the reference to 'moral certainty' would have been viewed as permitting a conviction based 'on a feeling rather than on the facts in the case.'" *Gilday*, 59 F.3d at 263 (quoting *United States v. Drake*, 673 F.2d 15, 21 (1st Cir. 1982)). Under these circumstances, "there is no reasonable likelihood that the jury would have understood moral certainty to be disassociated from the evidence in the case." *Victor*, 511 U.S. at 16.[3] I do not consider this to be a close question in the circumstances of this case. Thus, I conclude that the proposition that the moral certainty language, as used in the jury instructions here, did not violate Ladetto's due process rights is one that is not debatable among reasonable jurists. That is to say, in the context of the jury instructions as a whole, reasonable jurists would not find debatable the proposition that the erroneous moral certainty language was harmless.

---

[3] This conclusion is supported by other language in the instructions. For example, the trial judge forcefully reminded the jury of the defendant's presumption of innocence: "[The defendant] is protected during the trial by a presumption of innocence. He is presumed to be innocent. This presumption is not evidence. This prevails until there is proof of the defendant's guilt beyond a reasonable doubt." Tr. at 1194.

The petitioner next contends that the trial court's jury instructions with respect to malice, as an element of first-degree murder, violated his right to due process because it shifted to him the prosecution's burden of proof.[4] In *Sandstrom v. Montana*, the Supreme Court held that the statement "the law presumes that a person intends the ordinary consequences of his voluntary acts" in jury instructions is problematic from a constitutional perspective because it concedes a mandatory presumption of intent upon the government's proof of other elements of the crime. 442 U.S. 510, 512, 519 (1979). "[J]ury instructions that create mandatory presumptions -- which instruct a jury that it must infer an elemental fact, such as malice, from a basic fact, such as a knowing act -- may result in [a due process violation]." *Moore v. Ponte*, 186 F.3d 26, 33 (1st Cir. 1999) (citing *Hill v. Maloney*, 927 F.2d 646, 648-49 (1st Cir. 1990)).

However, even if a reviewing court finds that a jury instruction created a mandatory presumption, the court must determine "whether other parts of the instruction explained the particular infirm language to the extent that a reasonable juror could not have considered the charge to have created an unconstitutional presumption." *Moore*, 186 F.3d at 33 (quoting *Hill*, 927 F.2d at 649). After making this assessment, the court must then consider whether the erroneous instruction had "a substantial and injurious effect or influence on the jury's verdict," or was harmless under the circumstances. *Id.* at 34. One way to show that a *Sandstrom* error is harmless is to point to "substantial evidence" supporting the existence of the element of the offense. *Id.* (finding *Sandstrom* error harmless because overwhelming evidence, including, *inter*

---

[4] Ladetto objects to the following language in the jury instructions: "What is the meaning in law of the word, 'malice'? It means every unlawful motive which may be inferred from an unlawful killing. When there are no circumstances disclosed in the evidence tending to show justification or excuse, then there is nothing to rebut the natural inference of malice." Tr. at 1197.

*alia*, the fact that victim was hit by several blunt blows to the head while sleeping, established that the defendant had the requisite state of mind to be convicted of murder in the first degree).

Here, there was overwhelming evidence of malice, most significantly Ladetto's confession that he deliberately shot the victim through the head while committing the robbery. Moreover, the jury here, as in *Moore*, found that Ladetto killed the victim with deliberate premeditation, a necessary element for a finding of first-degree murder in Massachusetts.[5] The jury's finding of premeditation means that the jury was required to find the requisite malicious intent to convict Ladetto of first-degree murder. *See Moore*, 186 F.3d at 34 (stating that "a jury's finding of deliberate premeditation is generally inconsistent with a finding that the jury relied on presumed intent"); *see also Commonwealth v. Gibson*, 424 Mass. 242, 246-47 (1997) (stating that a finding of deliberate premeditation requires a finding of intent to kill).[6] Thus, even if the jury instructions created a mandatory presumption, this error "did not have a substantial or injurious effect on the jury's verdict." *Moore*, 186 F.3d at 34. In short, the record shows, beyond debate by reasonable jurists, that any erroneous malice instruction was harmless.

Finally, the petitioner argues that the trial court violated his constitutional right to due process in failing specifically to instruct the jury that it had to find deliberate premeditation

---

[5] The judge instructed the jury that to in order to find deliberate premeditation, the jurors had to be satisfied that the defendant had a "plan to murder", a "resolution to kill", and "killing in pursuance of the resolution." Tr. at 1199.

[6] The only other theory of murder the Commonwealth argued, and presented to the jury, was felony murder. Tr. at 1200-06 (instructing jury on the elements of felony murder). Even if the jury had found Ladetto guilty under this theory, the improper malice instruction would still be harmless because malice is not an element of felony murder. *See Commonwealth v. Rolon*, 438 Mass. 808, 823 (2003) (explaining that "malice need not be shown" to sustain a conviction of felony murder because "the intent to commit the predicate felony substitutes for malice").

beyond a reasonable doubt.  Looking again at the jury instructions as a whole, I determine that they made it clear to the jury that the Commonwealth had the burden of proof of demonstrating Ladetto's guilt of first-degree murder beyond a reasonable doubt.  As noted above, the instructions are replete with statements that the jury was required to find the defendant guilty only upon concluding "that the Commonwealth has proved its case against the defendant beyond a reasonable doubt."  Tr. at 1219.  Moreover, the jury instructions here referred to the reasonable doubt standard before *and* after setting forth the elements of first-degree murder.  For example, the trial judge provided an extensive definition of the reasonable doubt standard in the section of the instructions *immediately* preceding his definition of first-degree murder.  *See* Tr. at 1194-95.  There is nothing to indicate that the instructions on premeditation violated the petitioner's due process rights, and thus nothing that supports the issuance of a certificate of appealability on the petitioner's third claim.

## Conclusion

Because Ladetto's petition for the issuance of a certificate of appealability pursuant to 28 U.S.C. § 2253(c) and Fed. R. App. P. 22(b) is denied as to each substantive claim of his habeas petition, the certificate is denied as to the procedural question of whether his 1965 motion for a new trial is a pending motion that has stopped the running of the limitations period.
SO ORDERED.


Date:   November 1, 2005


/s/ REGINALD C. LINDSAY

United States District Judge

9